IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| TITI PIERCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:16-cv-00207-LJA |
| v. | ) | |
| | ) | |
| WARNER BROS. | ) | |
| ENTERTAINMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO<br>DEFENDANT'S MOTION TO DISMISS</u>

After humiliating Ms. Pierce on national television, not once, but twice, Defendant now seeks to throw her out of court claiming there is no remedy for the harm it caused her because it was just being funny.  Fortunately, the law does not allow Defendant to hide behind humor to avoid the consequences of its intentional and cruel actions.

Rather, even humorous statements must be examined to determine if they state false facts and if they do, then they are not protected by the First Amendment.  Defendant's motion is mostly premised on an incorrect claim that Ms. Pierce did not allege a false statement.  But she did.  Defendant stated on national television that Ms. Pierce's name was "titty Pierce," when it is actually Titi Pierce.  In doing so, it made a false and defamatory statement about her.  That false statement further forms the basis of Ms. Pierce's false light invasion of privacy claim (which is and may be pled in the alternative) and misappropriation of likeness claim (which is not precluded simply because Ms. Pierce used her business sign to truthfully advertise her name and real estate services).  When combined with the prominent display of Ms. Pierce's personal cell phone number and Defendant's knowledge that its statement was false and subjected Ms. Pierce to ridicule and harassment, Plaintiff has properly stated a distinct claim for intentional infliction of emotional distress.  In sum, Ms. Pierce has adequately pleaded her claims and the Court should deny Defendant's motion.

## FACTUAL BACKGROUND

Ms. Pierce was the unwilling subject of a segment on The Ellen DeGeneres Show (the "show") titled "*What's Wrong with These Ads…and These Signs?*" that aired on February 22, 2016 and again on April 15, 2016 (the "segment").  [Compl. (Doc. 1) ¶ 1].  Defendant distributes the show.  [Compl. ¶ 14; Def. Mot. (Doc. 6) at 2].  During the segment, Defendant displayed a picture of Ms. Pierce's real estate signs, and referred to her by purporting to read her name on the

sign, but said "titty Pierce," instead of her actual name, "Titi Pierce."  [Compl. ¶¶ 1-2].  Not only did Defendant call Ms. Pierce "titty," Defendant displayed her personal cell phone number for its national audience, even though Defendant blurred another number on the same sign.  [*Id.* ¶ 5].

The show actively solicits signs from its audience, all the while acknowledging that signs can lead to defamation or privacy claims.  The submission form asks for photos and any person submitting a photo must warrant that it does not constitute defamation:  "EllenTV, "Send Us Your Funny Sign Photos!"  …  By submitting Materials, you agree producer may…use the Materials in connection with the show….  Further, you warrant all Materials…do not violate the right of privacy or publicity of, or constitute a defamation against, any person or entity….  …"  *See* online form, http://www.ellentv.com/be-on-the-show/397/ (the "submission form").

Defendant presented its pronunciation of the name on the sign as fact, stating:  "Kimberly Jones from Warner Robins, Georgia.  My husband saw this sign and thought your viewers would enjoy the name of this realtor.  Titty Pierce."  [Def. Mot. at 9].  And then, a few seconds later, again:  "Ah, Titty Pierce."  [*Id.*].  Defendant never contacted Ms. Pierce for permission to use her sign or her cell phone number, or to check the pronunciation of her name.  [*See* Compl. ¶ 87].

Apparently aware that Titi is not the same thing as "titty," Defendant oriented the audience toward thoughts of breasts to elicit the response it desired, which was ridicule and laughter toward Ms. Pierce.  [*Id.* ¶¶ 31-33].  Defendant did so by displaying a sign reading "Nipple Convalescent Home" just before showing Ms. Pierce's real estate sign and then later wondering aloud as to whether Ms. Pierce had visited a "nipple home."  [*Id.* ¶¶ 29-30].  Prior to Defendant's segment, no one had ever referred to Ms. Pierce as "titty."  [*Id.* ¶ 34].

After Defendant aired the deliberate mispronunciation, Ms. Pierce began receiving ridiculing and harassing phone calls and voice mail messages at all hours of the day and night.

[Compl. ¶ 6].  And she and her family were ridiculed at home in Warner Robins.  [*Id.* ¶¶ 7, 50].

Because of the severe harassment, Ms. Pierce informed Defendant of the correct pronunciation of her first name, that the unblurred number on the sign was her personal cell phone number, and that she had been caused much pain and suffering due to the airing of the segment.  [*Id.* ¶¶ 8, 55-57].  Despite that information, Defendant re-broadcast the episode with no changes.  [*Id.* ¶¶ 10, 62].  Ms. Pierce then went through the cycle again—repeated ridiculing and harassing phone calls and ridicule and harassment on the streets of Warner Robins.  [*Id.* ¶¶ 11, 63].  The harassment and public ridicule have continued.  [*Id.* ¶¶ 4, 6, 11, 47-50, 54].

## ARGUMENT AND CITATION OF AUTHORITY

**I.   Plaintiff has met her pleading requirements**

A court should only dismiss a complaint under Rule 12(b)(6) where it appears that the facts alleged fail to state a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts are not to pass upon the probability of recovery; rather the complaint must only show a "reasonable expectation" of recovery.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court is to accept as true all well-pleaded facts in a plaintiff's complaint, and all reasonable inferences are construed in the light most favorable to the plaintiff.  *Moore v. Thomas Cty. Public Library Sys.*, 2016 WL 3212090, at *1 (M.D. Ga. June 9, 2016) (*quoting Bryan v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)).

Here, Defendant has not addressed this standard, instead seeking full protection under the First Amendment.  Defendant seeks to characterize the deliberate mispronunciation Ms. Pierce's name as "humor" and argues that, therefore, Plaintiff cannot recover.  But whether speech is "humor" is not the issue.  Rather, it is whether the speech asserted false facts about Ms. Pierce. *See, e.g.*, *No Witness, LLC v. Cumulus Media Partners*, 2007 WL 4139399, at *6 (N.D. Ga. Nov.

13, 2007) (denying motion to dismiss defamation claim because statement could be proven false and whether name-calling was defamatory was jury decision).  Ms. Pierce has adequately pleaded her claims, including the false fact stated in the segment:  the incorrect pronunciation of her name as a derogatory term.  [Compl. ¶¶ 10, 97-106].  Dismissal is inappropriate.

## II.   The Court should not dismiss Plaintiff's defamation claim because there is no absolute protection for humor and the segment makes a false statement

Defendant characterizes the segment as "humor" despite the fact that Defendant's statements on national television caused viewers to believe that Ms. Pierce's actual name is a derogatory term—"titty Pierce."  A defendant cannot escape liability from defamatory speech merely by claiming something is funny; the First Amendment does not absolutely protect speech that the speaker claims is humor.  Rather, the court must determine whether a reasonable viewer could understand the segment as stating false facts about Ms. Pierce.  As shown below, Defendant's statement went beyond mere name-calling because Ms. DeGeneres addressed Ms. Pierce's very name and deliberately mispronounced it to cause people to believe that "titty Pierce" is her real name.  The First Amendment does not protect this type of speech.

### A.      Humor is not entitled to absolute First Amendment protection

Defendant claims the deliberate mispronunciation of Ms. Pierce's name was humor, but even the cases Defendant cites make clear that the First Amendment does not categorically protect humor.  A defendant cannot defend against defamation merely by claiming something is funny.  *Salomone v. Macmillan Publ'g Co.*, 411 N.Y.S.2d 105, 108 (N.Y. Sup. Ct. 1978), *rev'd on other grounds*, 429 N.Y.S.2d 441 (N.Y. App. 1980) ("The mere assertion that a statement was meant to be funny does not automatically absolve the utterer.").  As another court stated, "humor and comedy have never been held to be entitled to absolute or categorical 1st Amendment protection."  *Frank v. Nat'l Broad. Co.*, 119 A.D.2d 252, 257 (N.Y. App. 1986).  That court also

recognized the danger in such a presumption:  "Indeed, the danger implicit in affording blanket protection to humor or comedy should be obvious, for surely one's reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact."  *Id.* Similarly, the court in *Polygram Records, Inc. v. Superior Court*, rejected the theory that viewers do not take comedy literally and further recognized the difficulty in defining comedy.  170 Cal. App. 3d 543, 552-53 (1985) ("Comedy…does not, in our view, admit of definition by any readily ascertainable general principle.  What is one man's amusement is another's calumny.").

Although courts in Georgia have not yet visited this theory of absolute protection for humor (which does not exist elsewhere either), Georgia courts recognize that even for alleged *opinions* there is "no wholesale defamation exemption for anything that might be labeled opinion [because to say otherwise would] ignore the fact that expressions of opinion may often imply an assertion of objective fact."  *Jaillett v. Ga. Television Co.*, 238 Ga. App. 885, 890 (1999) (internal citations omitted). Therefore, just as Georgia courts have rejected the argument that an alleged "opinion" is absolutely protected under the First Amendment, so, too, would they reject absolute protection for a purportedly "humorous" statement.

### B.    The purported "humor" stated false facts about Plaintiff

As the court in *Jaillett* stated, the question is whether the alleged defamatory statement implies an assertion of objective fact—not whether the statement is labeled opinion (or, in this case, humor).  238 Ga. App. at 890.  Here, the statement could reasonably be understood as providing a factual claim that Plaintiff's name is pronounced "titty Pierce," which it is not. [Compl. ¶ 21].  Defendant's argument ignores this fact and falsely claims that the segment drew on the "incongruity of Plaintiff's first and last name."  [Def. Mot. at 1].  But that is not what occurred.  Defendant falsely stated Plaintiff's first name in order to make it an allegedly funny

statement when combined with her last name.  But her first name is not "titty."  [Compl. ¶ 2].

None of the cases cited by Defendant should persuade this Court to hold that the deliberate mispronunciation of Ms. Pierce's name is humor, and not a purported fact, as a matter of law.  In fact, Defendant cites one case in which the court refused to dismiss a libel case by a private person who was referenced in a parody, holding that "only a jury should make the ultimate determination as to whether the use of a name for poking fun is within legitimate limits or is so inexcusably over the line as to warrant damages."  *Salomone*, 411 N.Y.S. 2d at 110.  In that case, defendants wrote a parody of the Eloise books in which Eloise grows up and comes back to the hotel; the problematic statement in the book was that the character referred to the hotel manager by name as a child molester.  *Id.* at 107.  Both the original Eloise books and the parody used the hotel manager's real name.  *Id.* at 108.  Although the court recognized that humorous words could be an exception to libel, the court recognized that the decision regarding that exception should be left to the jury.  *Id.* at 110 ("The issue of whether a matter is harmless humor or cruel and vicious derision is peculiarly a judgmental question.").  The court also found that this was particularly the case for a private plaintiff who never sought the limelight.  *Id.*[1]  Here, too, Ms. Pierce never sought the limelight, yet Defendant exposed her to ridicule and harassment by deliberating mispronouncing her name—a false fact—to state that her name was the act of piercing a human nipple.

---

[1] On the other hand, Defendant cites a case where a court held that parodists should be permitted to "poke fun at symbols and names which have become woven into the fabric of our daily life." *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 32 (1st Cir. 1987).  But Ms. Pierce is not a name that is part of society's daily life.  She is a private person.  Further, there was no allegation in that case that something was misstated, as was Ms. Pierce's name.  If Plaintiff's name was actually pronounced "titty Pierce," that case might hold sway; but it is not.  *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264 (1974), is also inapposite because there, the offensive word used ("scab") was used correctly.  Here, Ms. Pierce's name is not "titty." To say so was false.

As discussed in *Jaillett*, the critical question is whether, based on Defendant's deliberate mispronunciation, a reasonable viewer could find that Ms. Pierce's name is "titty Pierce."[2]   A reasonable viewer could so find.  There was nothing in the segment to negate the impression that "titty Pierce" was Plaintiff's name:  the show solicits real signs, the introduction that viewers would "enjoy ***the name of*** this realtor," the picture of the sign with the unblurred phone number, and repeating the name twice all support a finding that Defendant said "titty Pierce" was Plaintiff's name and the audience reasonably assumed that Defendant was expressing a fact. [Def. Mot. at 9 (emphasis supplied)].  All of this context imparts legitimacy to the deliberate mispronunciation of Ms. Pierce's name—making it more likely for reasonable viewers to believe that "titty Pierce" was Plaintiff's name.  And indeed, viewers did believe Ms. Pierce's name was "titty Pierce," as they made clear to her when they called to make fun of her.  [Compl. ¶¶ 38-44].

Critically, such truthful context is *not* the situation in the cases cited by Defendant, where the contexts are such that no reasonable person would believe that the alleged defamatory statements were true.  Unlike the cases that Defendant cited, the statement about Ms. Pierce was not rhetoric, opinion, hypothetical, loose/figurative, vague, fictional, nonsensical, or exaggerated satire.

***Defendant was not speaking rhetorically.***  Simply claiming rhetoric does not remove liability from a defendant.  In *Milkovich v. Loraine Journal*, 497 U.S. 1 (1990), the United States Supreme Court allowed the plaintiff to proceed with his defamation action for a newspaper's statements that he had lied and committed perjury in a judicial proceeding.  *Id.* at 21.  Although

---

[2] Defendant's argument that humor based on names is "very common" [Def. Mot. at 15 n. 7] is not pertinent here.  The websites that Defendant discusses use only written names, but Defendant deliberately misstated Ms. Pierce's name, knowing that the mispronunciation was false and derogatory.  Defendant's action crossed a line that the internet lists do not.

the defendant claimed it was opinion or rhetoric, the Court looked to whether a reasonable factfinder could find that the article implied an assertion that the coach had perjured himself.  *Id.* There was no other language to negate the tenor of the article that the plaintiff lied.  *Id.* Similarly, here, there was no language to negate Defendant's claim that Ms. Pierce's name was "titty" and indeed, viewers believed what they heard and called to laugh at Ms. Pierce about it. [Compl. ¶¶ 38-44].[3]

Defendant's claim that viewers would know that Ms. Pierce's name was not "titty" because Ms. DeGeneres smiled when she said it after a musical introduction is illogical. Defendant has pointed to no law that smiling and playing music negates falsity.  And the humor in the other signs does not give any context for disbelieving what was said about Ms. Pierce. There is no claim that the words on the other signs were mispronounced.  If Ms. Pierce's name was actually "titty," then a comparison to the other signs might be appropriate.  But it is not.

***Defendant did not share an opinion.***  Defendant's attempt to describe the segment as "opinion" reflects a misunderstanding of what is an opinion.  An opinion is a statement that cannot be proven true or false.  *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355, 357-58 (2011). There is no such thing as an opinion about how to pronounce someone's name:  there is a right way and there are wrong ways.  And even a statement of opinion loses protection if the

---

[3] *Cf. Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988) (noting that jury had already found that ad parody featuring Jerry Falwell engaged in drunken incestuous rendezvous with his mother in an outhouse was *not* reasonably believable). This case is unlike *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970).  There, a state representative was negotiating to sell land to the city at the same time that he was negotiating with the city for zoning variances for personal property.  *Id.* at 7.  There was a public controversy over the negotiations and an article referred to the plaintiff's negotiating position as "blackmail."  *Id.*  The Court noted that the article reported on the term "blackmail" used at heated public debates and that no one would read it as anything but criticism of the plaintiff's negotiating proposals; not as a claim that plaintiff was criminally charged with blackmail.  *Id.* at 14.

underlying truthful, non-defamatory factual basis for the opinion is not disclosed. *800 Mktg. Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*, 2008 WL 2777140, at *6 (M.D. Ga. 2008).

The cases Defendant cited demonstrate these distinctions.  In *Jaillett*, 238 Ga. App. 885, an air conditioner repairman sued for defamation based on a statement that his work was a "rip off."  The court noted that there is no liability for expressing an opinion based on a truthful statement of facts (there, an encounter with the repairman).  *Id.* at 890.  The court also found that the broadcast did not offer any suggestion that the reporter was aware of additional facts not disclosed in the broadcast.  *Id.* at 891.  Here, in starch contrast, Ms. DeGeneres did not state her opinion about how to pronounce Ms. Pierce's name, she definitively called her "titty Pierce," which is not her name.  Further, when the segment re-aired, Defendant had direct knowledge of the correct pronunciation.  Thus, unlike the defendant in *Jaillett*, Defendant was aware of additional facts not disclosed in the broadcast.

In *Brock v. Viacom Int'l, Inc.*, the plaintiffs, advocates for teaching creationism in schools, were interviewed for a television show, but unbeknownst to them, the interview was used in Penn & Teller's Bullshit! TV show.  2005 WL 3273767 (N.D. Ga. 2005), at *1, *6.  The commentary from defendants on the show was that the plaintiffs were "un-American" and "mentally unsound."  *Id.* at *2.  Unlike here, those characterizations were opinions based on undisputed facts (that plaintiffs were advocates for teaching creationism).  *Id.* at *5.  But the deliberate mispronunciation of Ms. Pierce's name is not an opinion.  Unlike an opinion, it is capable of being proved false, which Ms. Pierce has already alleged.  [Compl. ¶¶ 2, 21, 98].[4]

---

[4] The other cases that Defendant cites are also easily distinguishable because they are about statements incapable of being proven true or false and were characterizations of truthful, non-defamatory facts.  *See Monge v. Madison Cty. Record, Inc.*, 802 F. Supp. 2d 1327, 1335 (N.D. Ga. 2011) (statement in paper that attorney "torpedoed" a client's case is nonactionable opinion that attorney undermined case because paper included non-defamatory facts supporting the

***Defendant did not state a hypothetical.***  Defendant relies on one case in which the court found that the alleged defamatory statement was, on its face, a hypothetical such that no reasonable person would understand it in a defamatory sense.  In *Polygram Records, Inc. v. Superior Court*, Robin Williams made a statement about "why are there no Black wines like: REGE, a MOTHERFUCKER…." 216 Cal. Rptr. at 260.  Rege, a wine label, sued for defamation and trade libel, but the court found that the joke was built around the "rhetorical question" about why there are no black wines.  *Id.* at 261.  In that case there was no way to reasonably believe that Rege had a wine called "MOTHERFUCKER" because the statement was rhetorical and it was asked in the negative, namely, the speaker was asking why there was ***not*** such a wine.  But, here, Defendant did not use hypothetical language.

***Defendant did not use loose, figurative language.***  Defendant's deliberate mispronunciation of Ms. Pierce's name is in contrast to rhetorical hyperbole, the "loose, figurative language that no reasonable person would believe presented facts."  *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002).  In *Horsley*, the court noted that the entire context was hyperbolic, especially considering the plaintiff's own statements.  An interview between Geraldo Rivera and the plaintiff-activist took place just days after an "abortion doctor" had been killed.  292 F.3d at 698.  In an emotional debate, Rivera told the activist that he was "an accomplice to homicide," but the activist immediately responded, "You are, too, because you're—you're showing exactly the same information.  You're telling people about The

---

opinion); *No Witness, LLC*, 2007 WL 4139399, at *6 (statements by radio personality that former DJ was "pathetic," a "retard," and "captain back acne" were not factual and not actionable); *Lucas v. Crenshaw*, 289 Ga. App. 510, 514 (2008) (article about company's "rape" of land was nonactionable opinion about defendant company's tree removal from land); *Bird v. WEIS Broadcasting Corp.*, 193 Ga. App. 657 (1989), *cert. denied*, 193 Ga. App. 909 (1990) (statements that plaintiff's towing service was inferior were nonactionable opinions about practices of individuals involved in towing business).

Nuremberg Files list." *Id.* at 699.  The Court found that based on that response, even the activist understood that Rivera was speaking "on a figurative level." *Id.* at 702.  Here, the context is such that a reasonable person could find that Defendant made a factual declaration of Ms. Pierce's name.  There is no give-and-take debate here as in *Horsley* in which the conversation was elevated to a figurative, nonliteral plane.  It is a one-sided statement—supported by the actual sign and commentary—that purported to give Ms. Pierce's name for the viewers to "enjoy."

 ***Defendant did not make a vague statement.***  Vague statements, which cannot be proven true or false, are not actionable.  In *Seelig v. Infinity Broad. Corp.*, 119 Cal. Rptr. 2d 108, 118 (Cal. App. 2002), the plaintiff, who had refused to appear on a radio show to discuss her time on a reality television show, sued the radio show for slander, among other causes of action, when the hosts called her "chicken butt," "local loser," and "skank."  *Id.* at 17.  The court found that the words were "too vague to be capable of being proven true or false" and that "skank" had no generally recognized meaning.  *Id.* at 117-18.  But here, the deliberate mispronunciation is specific to Ms. Pierce; there is no question that it was intended to refer to her and that a reasonable viewer could find that Defendant purported to state her actual name.  Ms. Pierce has also alleged that the pronunciation is false; unlike a vague statement, the deliberate mispronunciation is capable of being proven false.

 ***Defendant did not purport to convey fiction.***  In *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555 (2005), the alleged defamatory statement occurred during a WCW wrestling event while the wrestlers were in their on-air characters and the statement was made to advance the storyline.  *Id.* at 558.  The court held that in that scenario the "alleged defamatory speech could not be understood as stating actual facts."  *Id.* at 558.  But in this case,

there is nothing in the context to indicate a fictional statement.  Rather, the context only serves to emphasize that Defendant is providing Ms. Pierce's actual name:  use of a real sign, sent in by a real viewer, with a real cell phone number that is not blurred.  Unlike a viewer of the wrestling match in *Bollea* who had no reason to believe that the in-character statement was non-fiction, a viewer of the segment has several reasons to believe it was hearing a purported truth.

 ***Defendant did not make a nonsensical statement.***  Defendant's deliberate mispronunciation is not so "extremely nonsensical and silly" that a reasonable listener could never take it seriously.  This case is not like the ridiculous tax advice given on a Saturday Night Live show.  In *Frank v National Broadcasting Co.*, the plaintiff tax consultant sued for defamation for a skit featuring a tax consultant character with his same name giving false tax advice.  119 A.D. 2d at 254.  The court found that the statements were "so extremely nonsensical and silly that there is no possibility that any person hearing them could take them seriously," and thus, they were not actionable.  *Id.* at 261.  For example, the purported tax advice included claiming your favorite houseplant as a dependent, taking a medical expense for a papercut, or taking a farm loss for a rotten tomato in the refrigerator.  *Id.* at 254.  But here, the context of the segment only shows that Defendant was purporting to convey Plaintiff's real name and is not so far-fetched that a reasonable viewer would not believe it.

 ***Defendant did not use exaggerated satire.***  In *New Times, Inc. v. Isaacks*, plaintiffs filed a libel suit for a satirical article in which false quotes were attributed to them.  146 S.W.3d 144, 149 (Tex. 2004).  The article was a satire of an actual incident involving plaintiffs, in which a 13-year old boy was arrested for writing a story about a school shooting.  *Id.* at 147.  The article used false quotes and involved a six-year-old girl who was jailed for writing a book report about "cannibalism, fanaticism, and disorderly conduct" in the children's book *Where the Wild Things*

*Are*.  *Id.* at 158.  The court looked to the text and found it could not be understood as stating

actual fact.  *Id.*  For example, the article referred to placing a child in ankle shackles due to her

disciplinary record, which included spraying a boy with pineapple juice, and the judge's alleged

statement that "[a]ny implication of violence in a school setting…is reason enough for panic and

overreaction." *Id.*  Here, however, the segment is not satire "convey[ing] any underlying critical

message." *Id.* at 151.  Rather, Defendant used the segment to invoke laughter and ridicule by

calling Ms. Pierce a derogatory term, which it conveyed as her actual name.

**III.    Ms. Pierce has properly pleaded her defamation claim**

In addition to showing that Defendant's only defense—that the segment was "humor"

and therefore protected by the First Amendment—fails, Ms. Pierce shows the Court that she has

sufficiently pleaded defamation.  The four elements of the tort of defamation are: "(1) a false and

defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third

party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the

actionability of the statement irrespective of special harm." *Bollea,* 271 Ga. App. at 557.  Ms.

Pierce has pleaded each of these elements.

**False and defamatory statement.** Ms. Pierce has sufficiently alleged that calling her

"titty Pierce" was false because her name is "Titi Pierce" (i.e., "TEE TEE").  [Compl. ¶¶ 2, 21,

98].  Ms. Pierce has also alleged that the segment conveys a defamatory meaning because it

implies that Ms. Pierce's name is a derogatory term and subjected her to ridicule.  [*Id.* ¶¶ 2, 10,

37-54, 62, 94, 99, 102].

**Unprivileged communication to a third party.** Ms. Pierce has alleged that Defendant

aired the segment to a national audience two times.  [Compl. ¶¶ 1, 10, 26, 62, 113].

**Fault by Defendant amounting to at least negligence.** The level of fault is determined

by whether the plaintiff is a public or private figure, and a private figure only need prove that the defendant acted with ordinary negligence. *1524948 Alberta Ltd. v. Lee*, 2011 WL 2899385, at *9 (N.D. Ga. July 15, 2011); *Sewell v. Trib Publ'ns, Inc.*, 276 Ga. App. 250, 255 (2005). Ms. Pierce is a private figure, and Defendant does not claim otherwise. Ms. Pierce has sufficiently pleaded this element because she alleged that Defendant did not attempt to confirm facts, should have known the correct pronunciation, and acted in contravention of direct knowledge that it was wrong. [Compl. ¶¶ 1, 10, 55, 60-63, 87, 94, 100, 103-106, 109, 112].

   ***Special harm or the actionability of the statement irrespective of special harm.*** The harm in a defamation claim occurs when the defamatory statement injures the plaintiff's reputation or subjects her to "public hatred, contempt, or ridicule." *Eidson v. Berry*, 202 Ga. App. 587, 587 (1992); O.C.G.A. § 51-5-1(a). Ms. Pierce has alleged that the segment has subjected her to harassment, ridicule, humiliation, and has affected her reputation. [*Id.* ¶¶ 4, 6, 7, 11, 47-53, 57, 63, 111-112, 114, 116, 117].

**IV.** **The Court should not dismiss Plaintiff's false light invasion of privacy claim because she is permitted to plead alternative theories and she has alleged a false fact**

   As a threshold matter, a plaintiff may plead alternative theories. If the segment is not defamatory, then it may support a false light invasion of privacy claim. Federal Rule of Civil Procedure 8(d) expressly permits a plaintiff to plead in the alternative or even inconsistently. Fed. R. Civ. P. 8(d); *id.* 8(a)(3). Indeed, this Court has recognized that under Georgia law, defamation and false light invasion of privacy claims are distinct claims and can be raised together. *Maples v. Nat'l Enquirer*, 763 F. Supp. 1137, 1143 (N.D. Ga. 1990) (permitting both defamation and false light claims to proceed at the motion to dismiss stage based on Rule 8).

   A complaint need not state that the theories are being pleaded in the alternative when it is reasonable to assume that alternative theories are being sought, particularly because Rule 8 does

not require specification of which theories are being sought in the alternative.  *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 536–37 (S.D.N.Y. 2002).  Indeed, Rule 8(d) supports that holding: "Pleadings must be construed so as to do justice."  Ms. Pierce's false light invasion of privacy claim can stand because it is an alternative theory.  As stated in *Smith v. Stewart*, 291 Ga. App. 86, 100 (2008), if the segment is defamatory, then the claim is for defamation; but if the segment is determined not to be defamatory, then there is a claim for false light invasion of privacy.  Defendant failed to recognize that Plaintiff has pleaded her claims in the alternative.[5]

Moreover, just as Defendant argued under the defamation claim, Defendant claims that Ms. Pierce has not alleged any false fact.  But Ms. Pierce *did* plead the publication of a false fact: the deliberate mispronunciation of her name.  [Compl. ¶¶ 2, 21, 98].  As discussed in detail above, false facts are not protected by the First Amendment.  Contrary to the cases cited by Defendant [Def. Mot. at 17], the deliberate mispronunciation of Ms. Pierce's name is a false fact, not an opinion.  *Pospicil v. Buying Office, Inc.*, 71 F. Supp. 2d 1346, 1362 (N.D. Ga. 1999) (finding that defendant's statement describing plaintiff as a "psycho" was a personal opinion); *S&W Seafoods Co. v. Jacor Broad. of Atlanta,* 194 Ga. App. 233, 237 (1989) (holding that an opinion cannot form basis of false light claim).

**V.    The Court should not dismiss Plaintiff's misappropriation of likeness claim because she has a right of publicity regardless of her own public use of her real estate sign and she has otherwise adequately pleaded her claim**

Defendant has argued that Ms. Pierce's misappropriation of likeness claim should be dismissed because (1) her right of publicity does not attached to something that is "open to public observation" and (2) there was no commercial gain.  These each fail.

---

[5] Though Plaintiff believes her complaint is sufficient, to erase any doubt as to whether she has pleaded these claims alternatively, she is filing, simultaneously herewith, an unopposed motion to amend her complaint to clarify her allegations.

First, Ms. Pierce maintains a right of publicity in her real estate sign regardless of her use of it as a business advertisement.  Importantly, the interest protected with a misappropriation of likeness claim is a proprietary interest in the exclusive use of a plaintiff's name and likeness as part of her identity.  *Toffoloni v. LFP Publ'g Group, LLC*, 572 F.3d 1201, 1206 (11th Cir. 2009). Georgia policy is that a person should have a "right of control" over the circumstances under which their name or image is made public and subject to scrutiny.  *Id.*  Here, Defendant took Ms. Pierce's written name and deliberately mispronounced it on national television—twice— misappropriating the correct way to say her name and turning it into a derogatory term.  By doing so, they took control of the pronunciation of Ms. Pierce's name away from her.

Keeping the purpose of a misappropriation of likeness claim in mind, then, the argument that the speech only involved a "publicly-viewable real estate sign" falls flat.  It was a written sign in public, but when it was included in the segment, which was set up to ridicule Ms. Pierce, and when Defendant deliberately mispronounced Ms. Pierce's name on the sign, Defendant misappropriated something that was not publicly viewable—the correct pronunciation.

Moreover, Georgia courts have permitted a misappropriation of likeness claim for something "publicly-viewable" and have not made the distinction found in *Toffoloni*.  In *Bullard v. MRA Holding, LLC*, 292 Ga. 748 (2013), the Georgia Supreme Court held that a plaintiff who publicly exposed her breasts, allowing them to be filmed, during spring break, could sue the defendants, who included the video clip in a video called *College Girls Gone Wild*.  The court held that the "consent" she gave for the initial video clip did not amount to consent for them to use her image for commercial gain.  *Id.* at 753.  The court did not frame the argument as whether it was publicly viewable.  Rather, the question is whether the plaintiff's name or likeness was appropriated for the defendant's advantage.  *Id.* at 752.  Here, simply because a real estate sign is

16

in the public, does not mean that Defendant can use the sign to deliberately mispronounce the name on the sign as a derogatory term for its commercial gain.  Defendant used Ms. Pierce's name for its own gain.  In doing so, it invaded her right to control the use of her own name.

Second, Defendant's claim that there was no commercial or financial gain is false. Plaintiff alleged that Defendant gained notoriety and profit from the use of the segment when it alleged that Defendant publishes the show to a national audience and that the segment was used in advertisements through the show's website and Facebook page.  [Compl. ¶¶ 9, 14, 58]. Nevertheless, Plaintiff has simultaneously herewith filed an unopposed motion to amend her complaint to clarify the allegations.

Finally, Defendant claims that it has an interest in freedom of expression, yet it does not cite to cases that support a freedom of expression for *false facts*.  Rather, false statements of fact are not entitled to the newsworthiness exception.  In *Maples v. National Enquirer*, the plaintiff alleged that there were false statements about him, and the court held that his claim of misappropriation of likeness did not fall within the protection of "news."  763 F. Supp. at 1143. The court held that "to fit within the zone of protection afforded news, an account must be factually accurate."  *Id.*  Defendant also cites *Somerson v. World Wrestling Entertainment, Inc.*, 956 F. Supp. 2d 1360 (N.D. Ga. 2013), for the proposition that commercial use does not include entertainment and news, among other subjects.  But in *Somerson*, the plaintiff made no allegation that any statement was false.  *See id.*  Here, however, Ms. Pierce has claimed falsity; Defendant cannot then rely on a newsworthiness exception to escape liability.

## VI. The Court should not dismiss Plaintiff's intentional infliction of emotional distress claim because it is based on more than just words, and Defendant intentionally re-aired the segment to ridicule and harass Plaintiff

Defendant has sought to portray Ms. Pierce's intentional infliction of emotional distress

claim as simply a restatement of the defamation claim.  But, critically, the basis of the intentional infliction of emotional distress claim is more than just the false words of stating Plaintiff's name as "titty Pierce."  Defendant mispronounced Ms. Pierce's name while also displaying her personal cell phone number on national television, which subjected her to harassing and ridiculing telephone calls, when it had the ability to blur the number.  [Compl. ¶¶ 28, 30].  And Defendants intentionally re-aired the segment with no changes even after Defendant was put on actual notice by Ms. Pierce that her name was pronounced incorrectly in the segment, that it was her cell phone number on the sign, and that the original airing of the segment caused her to be harassed and ridiculed.  [Compl. ¶¶ 55, 57, 61-62, 131-35].

Defendant fails to appreciate the extent of Ms. Pierce's claim; her claim for intentional infliction of emotional distress is not duplicative and does not consist only of "words."  Because Defendant only focuses on the "words," the broad statement quoted by Defendant from *Carter v. Willowrun Condominium Association*, 179 Ga. App. 257, 259 (1986), that "[t]he legal remedy where one is allegedly injured by words published to a third person is an action for defamation," is irrelevant.  Ms. Pierce has not alleged that she was injured only by words—she was injured by Defendant's intentional airing of a deliberate mispronunciation of her name along with her cell phone number and then re-airing both after direct notice of its mistakes and the harm it caused.

Moreover, the statement from *Carter* is taken out of context and is not supported by later Georgia cases.  In *Carter*, a condo association sent a letter to the plaintiff-renter's lessor about alleged misconduct.  The court first held there was no libel because there was no publication under the intra-corporate exception for publication.  179 Ga. App. at 257.  The court then held that there was no intentional infliction of emotional distress claim because the only act complained of—sending the letter—was not directed to the plaintiff; it was sent to the lessor.  *Id.*

18

at 259.  Then, in dicta, the court added the broad statement that injury by words is an action for

defamation.  *Id.*  But in a later case, *Carter* is cited for the proposition that statements directed to

others are not actionable, using defamatory remarks as only an example.  *Lively v. McDaniel*,

240 Ga. App. 132, 134 (1999) ("Defamatory remarks made to others or to the public in general

are classic ***examples*** of conduct that, though harmful to the plaintiff, was directed toward the

hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of

emotional distress.") (emphasis supplied).  Therefore, the focus should be on whether the

statements are false and whether the conduct was directed to Plaintiff.  *Id.*; *see also Munoz v.*

*Am. Lawyer Media, L.P.*, 236 Ga. App. 462, 465 (1999) (no intentional infliction of emotional

distress claim for *truthful* article); *Tucker v. News Publ'g Co.*, 197 Ga. App. 85, 86 (1990)

(same).  These cases, therefore, *do not* support Defendant's proposition that defamation and

intentional infliction of emotional distress claims cannot co-exist.[6]

Ms. Pierce has met the pleading requirements.  She has alleged that the statement in the

segment was false.  [Compl. ¶¶ 2, 21, 98].  She has also alleged that Defendant's conduct—

which encompasses more than just the statement on the segment—was directed to her because

Defendant did not blur her cell phone number, even though it blurred another number on the

sign.  [Compl. ¶ 28].  Further, at the time that the segment was re-aired, Defendant had actual

knowledge that it was wrong and that Ms. Pierce had been harassed on her personal cell phone

because of the segment.  [*Id.* ¶¶ 131-35].  Again, Defendant had the ability to blur Ms. Pierce's

---

[6] Indeed, in *Munoz*, there was not both defamation and intentional infliction of emotional distress claims.  Although Defendant's explanatory parenthetical [Def. Mot. at 20] states that the intentional infliction of emotional distress claim was dismissed based on the dismissal of a defamation claim in *Munoz*, there was no defamation claim brought in that matter. Rather, the other claim was for invasion of privacy, and the court held that under that cause of action, the press cannot be held liable for accurately reporting a trial. 236 Ga. App. at 464.

cell phone number, yet intentionally chose not to do so.  [*Id.* ¶ 132].  Defendant knew that the re-airing of the segment, complete with her personal cell phone number, would again subject her to harassment and ridicule.  [*Id.* ¶¶ 131-35].  Ms. Pierce had notified Defendant that not only was her name pronounced incorrectly, but also that the number displayed was her personal cell phone number, and that people were using that phone number to harass her.  [*Id.* ¶¶ 10, 55-57, 133].

This deliberate re-airing of the segment with Ms. Pierce's cell phone number despite Defendant's actual knowledge that it would result in severe ridicule for Ms. Pierce is sufficient for a jury to find that the re-airing was directed to Ms. Pierce.  *Cf. Sevcech v. Ingles Mkts., Inc.*, 222 Ga. App. 221, 224 (1996) (holding that a wife watching her husband be falsely arrested did not allege any conduct directed to her and had no intentional infliction of emotional distress claim).  Here, Defendant knew that Ms. Pierce was part of its national audience and a jury could reasonably find that Defendant, after receiving the communication from Ms. Pierce about her complaints regarding the segment, intentionally re-aired the segment in order to ridicule her again, conduct that would be directed to her.  And, finally, she alleged that it was highly offensive, and would be to any reasonable person.  [*Id.* ¶¶ 129-30].

## CONCLUSION

The underlying argument that Defendant poses is simply wrong:  Ms. Pierce ***has*** alleged that the segment stated a false fact about her:  calling her "titty Pierce" when her name is Titi Pierce.  And Ms. Pierce has more than adequately pleaded the other elements of her claims.  The Court should not summarily dismiss this case.

Respectfully submitted this 30th day of September 2016.

 /s/ Stacey Godfrey Evans
 Stacey Godfrey Evans
 stacey@sgevanslaw.com
 Georgia Bar No. 298555

20

**S.G. Evans Law, LLC**
1180 West Peachtree Street
Suite 2400
Atlanta, Georgia 30309
404-891-1402
678-868-1230 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing PLAINTIFF'S RESPONSE IN

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS with the Clerk of Court using the

CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys

of record.

This <u>30th</u> day of September 2016.

/s/ Stacey Godfrey Evans
Stacey Godfrey Evans
