# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

|  |  |  |
|---|---|---|
| TITI PIERCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:16-CV-207 (LJA) |
| | : | |
| WARNER BROS ENTERTAINMENT, | : | |
| INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court are Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 6) and Plaintiff's Motion to Amend Complaint (Doc. 12). For the following reasons, Defendant's Motion to Dismiss (Doc. 12) is **GRANTED** and Plaintiff's Motion to Amend (Doc. 12) is **DENIED**.

## BACKGROUND

Plaintiff Titi Pierce initiated this action on June 2, 2016. (Doc. 1). Plaintiff's Complaint alleges that Defendant committed the torts of false light invasion of privacy, misappropriation of likeness, defamation, and intentional infliction of emotional distress, in violation of Georgia state law. *Id.* Plaintiff's allegations arise from an episode of the Ellen DeGeneres Show, in which a segment called "*What's Wrong with These These Signs? Signs*" appeared. *Id.* at ¶ 1.[1] The segment aired on February 22, 2016, and again on April 15, 2016. *Id.*

---

[1] Defendant submitted a DVD recording of the segment with its Motion to Dismiss. (Doc. 7). Because the recording is central to Plaintiff's claims and neither party challenges its authenticity, the Court will consider the recording without converting Defendant's Motion to Dismiss into a Motion for Summary Judgment. *See SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Somerson v. World Wrestling Entertainment, Inc.*, 956 F.Supp.2d 1360, 1372 n. 2 (N.D. Ga. 2013).

DeGeneres introduces the segment by saying, "I've got some more mistakes I want to show you right now in our segment '*What's Wrong with These Signs? Signs.*'" (Doc. 7). First, a picture of a sign reading, "Breakfast is Served" over a display of wine bottles is shown. *Id.* Referring to the photo, DeGeneres says, "The most important meal of the day in there. I don't know what's wrong with that sign." *Id.* Next, a picture of a sign for a dentist office is shown. The sign is fluorescent, and it is obvious that some of the lights illuminating the letters are not working. The illuminated letters read, "ow! Dental," whereas the non-illuminated letters read, "Now! Dental." *Id.* DeGeneres pronounces the name in the sign as "ow! Dental," and suggests that the office is next door to "Ew Proctology." *Id.* Next, a picture of a sign reading "$exchange" is shown. DeGeneres pronounces the word in the sign as "sex change" and suggests that "you can come back from your vacation feeling like a new man." *Id.* Next, a picture of a sign reading "Nipple Convalescent Home" is shown. After reading the name aloud, DeGeneres asks "What boob named that place?". *Id.*

Finally, a picture of Plaintiff's real estate yard sign is shown. The sign displays Plaintiff's name and phone number, as well as the name of her company. *Id.* Another phone number under her company's name has been blurred out. *Id.* DeGeneres pronounces Plaintiff's name as "tĭ-tē" rather than the pronunciation used by Plaintiff, "tē-tē." *Id.* DeGeneres then says, "Ah, tĭ-tē Pierce. Sounds like she might have spent some time in that Nipple home, I don't know." *Id.* She then thanks the viewers for sending in the photos, and the segment ends as the show cuts to a commercial break. *Id.*

After the segment first aired on February 26, 2016, Plaintiff received many phone calls from unknown callers making fun of her name. (Doc. 1, ¶¶ 37-38). After she stopped answering the phone calls, she received several "harassing and ridiculing voice mail messages" and text messages *Id.* at ¶¶ 39, 45. Plaintiff's co-workers also fielded some of these phone calls following the segment, and eventually issued a statement on the company Facebook page to try and ward off callers. *Id* at ¶ 46. The segment was also posted on the Ellen DeGeneres Show's Facebook page, and Plaintiff describes the comments as "mostly vile and very hurtful to read." *Id.* at ¶¶ 51, 53.

Plaintiff contacted Defendant twice after the segment initially aired, informing Defendant of her preferred pronunciation of her name, and pointing out that Defendant did not blur out her telephone number despite blurring out the second phone number on her real estate sign. *Id.* at ¶¶ 56-57. On April 15, 2016, Defendant aired the segment again without changing Plaintiff's name pronunciation or blurring out her phone number. *Id.* at ¶ 62. After the second airing, Plaintiff received a fresh batch of harassing telephone calls and endured a "fresh assault" on social media. *Id.* at ¶ 63.

## MOTION TO DISMISS

### I.   Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert the defense of failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead enough facts to state a claim for relief that is plausible—not just conceivable—on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Restated, "the factual allegations in the complaint must possess enough heft to set forth a plausible entitlement to relief." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (internal citation and punctuation marks omitted).

On a motion to dismiss, the Court "construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged [] in the complaint as true." *Sinaltrainal v.Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While notice pleading is a liberal standard, "it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. A "plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Moreover, when evaluating the sufficiency of a complaint,

the Court must "make reasonable inferences in plaintiff's favor;" however, the Court is "not required to draw plaintiff's inference[s]." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).

## II.   Discussion

### a.   Defamation

Plaintiff fails to state a claim for defamation. Under Georgia law, defamation requires: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant at least amounting to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 557 (2005). At issue in this case is whether DeGeneres made a false and defamatory statement about Plaintiff when she pronounced Plaintiff's name as "tĭ-tē," instead of "tē-tē." Plaintiff's claims fail because, even when a statement is demonstrably false, the First Amendment "provides protection for statements that cannot reasonably be interpreted as stating actual facts about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Jaillett v. Georgia Television Co.*, 238 Ga. App. 885, 890 (1999) (noting that the first amendment protects statements of "rhetorical hyperbole"). "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20.

In determining whether an allegedly false statement is protected under the First Amendment as rhetorical hyperbole, "the pivotal questions are whether [the challenged] statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false." *Jaillet*, 238 Ga. App. at 890; *Horsley v. Rivera*, 292 F.3d 695 (11th Cir. 2002). "Although the fictional or humorous nature of a publication will not necessarily insulate it from a libel claim, if the allegedly defamatory statement could not be reasonably understood as

describing actual facts about the plaintiff or actual events in which he participated, the publication will not be libelous." *Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 558 (2005).

"The test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality in the context in which it was uttered or published." *Id.* (quoting *Ollman v. Evans*, 750 F.2d 970, 1000 (D.C. Cir. 1984)); *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002) (noting that the Court must "consider the circumstance in which the statement was expressed"); *Bryant v. Cox Enterprises*, 311 Ga. App. 230, 238 (2011) ("[T]hese statements cannot be considered in isolation to determine whether they are true or false. Rather, we must construe each statement in the context of the entire writing to assess the construction placed upon it by the average reader."). "Generally, whether a published statement is defamatory is a question for the jury." *Executive Excellence, LLC v. Martin Bros. Investments, LLC*, 309 Ga. App. 279, 290 (2011). However, "[i]f the meaning of a publication is so unambiguous so as to bear only one reasonable interpretation, the determination as to whether it is defamatory is for the court." *Bryant v. Cox Enterprises, Inc.*, 715 Ga. App. 230, 235 (2011); *Macon Telegraph Pub. Co. v. Elliott*, 165 Ga. App. 719, 720 (1983).

Given the context of the statement, no reasonable person could believe that it implied defamatory facts about Plaintiff. In *Bollea v. World Championship Wrestling, Inc.*, the Georgia Court of Appeals confronted the question of whether statements made on television by a wrestler in character could reasonably be interpreted as defamatory facts about the individual who played a different wrestling character. 271 Ga. App. 555 (2005). Noting that the story line was scripted, and that the wrestler's statements were made solely to advance the story-line, the Court concluded that "the allegedly defamatory speech could not be understood as stating actual facts about [Plaintiff]." *Id.* at 558. Similarly, DeGeneres's pronunciation of Plaintiff's name was made in the context of a scripted television segment, and her pronunciation of Plaintiff's name was made to advance the joking purpose of a segment called, "*What's wrong with these signs? Signs.*" The title of the segment itself implies that there is something incorrect or entertaining about the forthcoming signs, and indicates

that DeGeneres's statements should not be taken literally. Nor could DeGeneres's pronunciation be proven to be demonstrably false. The letter "i" in the English language can be pronounced in several ways. While Plaintiff chooses to pronounce her name with "ē," there is nothing "demonstrably false" in pronouncing it with "ĭ" as DeGeneres did. Nor would it have been defamatory to have pronounced Plaintiff's name "tī-tī" or "tĭ- tĭ," or any other possible permutation.[2] That Plaintiff was insulted or embarrassed does not transform the different pronunciation into a false one.

Even accepting that Defendant's pronunciation of Plaintiff's name was a mispronunciation, it was made in the context of other obvious mispronunciations. In *Bennett v. Hendrix*, the Eleventh Circuit considered whether a flyer displaying a single photo with the sentence, 'Should a Candidate for Sheriff finance his campaign using cash from convicted criminals?" could reasonably imply that the man in the photo was a convicted criminal. 325 F. App'x 727 (2009). In determining that the statement on the photo was not constitutionally protected rhetorical hyperbole, the Court noted that the flyer only contained a picture of one person and was published by the chief law enforcement officer in the county. *Id.* at 741. In contrast to a single publication by a law enforcement officer, DeGeneres, a comedian, deliberately mispronounced two other signs in the same two-minute segment for comedic effect. She pronounced "Now! Dental" as "Ow! Dental" and "$ Exchange" as "Sex change." In this context, even if DeGeneres's pronunciation was, in fact, a mispronunciation, the statement was not defamatory because her statement cannot be reasonably interpreted as stating defamatory facts about Plaintiff. *See Jaillet*, 238 Ga. App. at 890.

Furthermore, DeGeneres's statement immediately succeeding her pronunciation of Plaintiff's name, that she might have spent time in the Nipple Convalescent Home, could not reasonably be interpreted as stating or implying that Plaintiff did, in fact, spend time in such a home. Just as no person viewing President Washington portrayed as an ass in a political cartoon reasonably could have interpreted the image to imply that President Washington was, in fact, a donkey, *see Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 54 (1988),

---

[2] As an amusing meme points out, "If the GH sound in ENOUGH is pronounced "F", and the O in WOMEN makes the short "I" sound, and the TI in NATION is pronounce "SH", then the word GHOTI is pronounced like "FISH." Welcome to the English language. http://ipa.mp3yab.ir/img/1.jpg

no person watching the Ellen DeGeneres show could reasonably have believed anything DeGeneres said to be stating actual facts about Plaintiff. Accordingly, DeGeneres's statement was protected under the First Amendment Doctrine of rhetorical hyperbole. Moreover, because DeGeneres's statement was so unambiguously humorous as to bear only one reasonable interpretation, dismissal of Plaintiff's defamation claim is appropriate. *Bryant*, 715 Ga. App. at 235.

### b. False Light Invasion of Privacy

Plaintiff fails to state a claim for false light invasion of privacy under Georgia law. As discussed above, Defendant's conduct is constitutionally protected rhetorical hyperbole. Constitutionally privileged statements cannot form the basis of a claim for false light invasion of privacy under Georgia law. *See S & W Seafoods Co. v. Jacor Broadcasting of Atlanta*, 194 Ga. App. 233, 237 (1989); *Monge v. Madison County Record, Inc.*, 802 F.Supp.2d 1327, 1337 (N.D. Ga. 2011); *see also Flowers v. Carville*, 310 F.3d 1118, 1133 n. 14 (9th Cir. 2002) ("The false light tort does not allow recovery for rhetorical hyperbole."); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001) (holding that First Amendment protections apply to the tort of false light invasion of privacy). Accordingly, Plaintiff has failed to state a claim for false light invasion of privacy.

### c. Misappropriation of Likeness

Plaintiff fails to state a claim for misappropriation of likeness under Georgia law. The elements of a misappropriation of likeness claim are: (1) the appropriation of another's name and likeness, whether such likeness be a photograph or other reproduction of the person's likeness; (2) without consent; and (3) for the financial gain of the appropriator. *Bullard v. MRA Holding*, 740 S.E.2d 748, 752 (2013). That which is "open to public observation," however, cannot be appropriated. *Toffoloni v. LFP Publishing Group, LLC*, 572 F.3d 1201, 1207 (11th Cir. 2009). To determine whether information is open to public observation, the Court does not look to the "manner in which information has been obtained." *Id.* at n.1. Rather, the question is "whether the information disclosed was public rather than private- whether it was generally known and, if not, whether the disclosure [was made] to the public at large." *Id.* Plaintiff's likeness, displayed on her real estate sign, was clearly "open to public

7

observation" and generally known as Plaintiff willingly displayed her sign advertising her real estate business.

Plaintiff attempts to distinguish *Toffloni* by citing to a subsequent Georgia Supreme Court case, *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 752 (2013). In *Bullard*, the Court noted that, "while a private citizen may not have the same commercial value in his or her name and likeness that a celebrity may have… that would not foreclose that person from pursuing a cause of action against a wrongdoer who appropriated the person's name and likeness for their own commercial gain." *Id.* Plaintiff uses this case to argue that, because a private citizen can pursue a claim for misappropriation of likeness, it is not relevant whether or not the information disclosed was open to the public. This reliance on *Bullard* is misplaced, however, because the information at issue in *Bullard*, a video of a fourteen year old girl exposing her breasts, was clearly not "generally known" and "open to the public." *Toffoloni*, 572 F.3d at n.1. Regardless of whether the plaintiff is a private citizen or a public figure, information that is open to the public cannot be misappropriated. *Id.* at 1207. Because Plaintiff's real estate sign was public information, she failed to state a claim for misappropriation of likeness.

### d. Intentional Infliction of Emotional Distress

Plaintiff fails to state a claim for intentional infliction of emotional distress under Georgia law. Even intentional conduct "will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." *Smith v. Stewart*, 291 Ga. App. 86, 101 (2008); *see also Carter v. Willowrun Condominium Ass'n, Inc.*, 179 Ga. App. 257, 259 (1986). Plaintiff argues that Warner Bros. directed conduct at her by re-airing the segment after she complained of harassing phone calls following the segment's initial appearance. Public broadcasts, however, are not directed at a particular individual and thus are not "actionable as intentional infliction of emotional distress." *Lively v. McDaniel*, 240 Ga. App. 132, 134 (1999); *see also Wolff v. Middlebrooks*, 256 Ga. App. 268, 271 (2002) (holding that comments "made during a radio broadcast to thousands of people" were not directed towards the plaintiff). Accordingly, Plaintiff failed to state a claim for Intention Infliction of Emotional Distress.

**MOTION TO AMEND**

On September 30, 2016, Plaintiff filed a Motion for Leave to Amend Complaint (Doc. 12). Although the Motion was styled as an "Unopposed Motion," it became clear at a subsequent case management conference that Plaintiff was seeking to file her Motion to Amend conditionally in case the Court granted Defendant's pending Motion to Dismiss. (Doc. 17, at 3:2-24). Plaintiff indicated that she believed Eleventh Circuit case law required her to file a motion to amend before the Court ruled on Defendant's dispositive motion. *Id.* Although it is true that the Court is not required to give a plaintiff leave to amend if the plaintiff waits to amend until after the Court rules on a dispositive motion, *see Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002), Eleventh Circuit caselaw does not require the Court to hold a motion to amend in abeyance until after its ruling. A different rule would violate the Eleventh Circuit's stated policy of avoiding giving plaintiffs "two bites at the apple." *Id.* Accordingly, the Court allowed Plaintiff to choose whether she wished to amend her complaint, in which case the amended complaint would have superseded the original complaint, *see Schreane v. Middlebrooks*, 522 F. App'x 845, 848 (11th Cir. 2013), or whether she wished for the Court to give an opportunity for Defendant to withdraw its consent to her motion to amend, and allow the Court to consider whether such a motion was futile at the same time it ruled on Defendant's Motion to Dismiss. (Doc. 17, at 7:5-23). Plaintiff chose for the Court to consider her Motion to Amend while ruling on Defendant's Motion to Dismiss. *Id.* at 7:24-25. On November 11, 2016, Defendant formally withdrew consent to Plaintiff's Motion for Leave to Amend Complaint. (Doc. 18).

Plaintiff seeks to amend her complaint by: (1) clarifying that her claim for false light invasion of privacy is made in the alternative to her claim for defamation; and (2) alleging that Defendant used her likeness for commercial and financial gain without her consent. (Doc. 12-1, ¶¶ 65, 90-95). Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within twenty one days after the service of a responsive pleading, or twenty one days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Alternatively, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court

should freely give leave when justice so requires." *Id.* If, however, the moving party displays "undue delay, bad faith, or dilatory motive," or the amendment is "futile," the District Court has discretion to deny the motion to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("While a decision whether to grant leave to amend is clearly within the discretion of the district court, a justifying reason must be apparent for denial of a motion to amend."). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (2007).

Plaintiff's proposed amendments to her complaint are futile because her complaint would still properly be dismissed as amended. Plaintiff's first proposed amendment is to clarify that she pleads false light invasion of privacy in the alternative to defamation. Plaintiff's amended complaint properly pleads false light invasion of privacy in the alternative to defamation.  *See Bollea v. World Championship Wrestling, Inc.*, 271 Ga. App. 555, 557 (2005) ("In order to survive as a separate cause of action, a false light claim must allege a nondefamatory statement. If the statements alleged are defamatory, the claim would be for defamation only, not false light invasion of privacy."). As stated above, however, not only are Defendant's statements nondefamatory, but they are protected by the First Amendment, which applies in both defamation and false light invasion of privacy cases. Accordingly, Plaintiff's amendment is futile because it would still be properly dismissed on First Amendment grounds.

Plaintiff's second proposed amendment attempts to add allegations relating to her misappropriation of likeness claim. The elements of a misappropriation of likeness claim are: (1) the appropriation of another's name and likeness, whether such likeness be a photograph or other reproduction of the person's likeness; (2) without consent; and (3) for the financial gain of the appropriator. *Bullard v. MRA Holding*, 740 S.E.2d 748, 752 (2013). Plaintiff's proposed amendments relate to the consent and financial gain elements of the claim. These amendments are futile, however, because Plaintiff failed to plead facts sufficient to find appropriation, which is a necessary element of the misappropriation of likeness tort.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 6) is **GRANTED** and Plaintiff's Motion to Amend (Doc. 12) is **DENIED**.


**SO ORDERED**, this  15th   day of   February  , 2017.


/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**

11